# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MALORIE K. THURMAN,            )
                              )
                Plaintiff,    )
                              )
v.                            )     Case No. CIV-12-038-KEW
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security Administration,      )
                              )
                Defendant.    )

## OPINION AND ORDER

Plaintiff Malorie K. Thurman (the "Claimant") requests
judicial review of the decision of the Commissioner of the Social
Security Administration (the "Commissioner") denying Claimant's
application for disability benefits under the Social Security Act.
Claimant appeals the decision of the Administrative Law Judge
("ALJ") and asserts that the Commissioner erred because the ALJ
incorrectly determined that Claimant was not disabled. For the
reasons discussed below, it is the finding of this Court that the
Commissioner's decision should be and is REVERSED and REMANDED for
further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 22, 1984 and was 25 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant worked in the past as a cashier, food server, convenience store clerk, short order cook, assistant manager, and

a retail cashier/stocker. Claimant alleges an inability to work beginning November 15, 2007 due to limitations resulting from non-ischemic dilated cardiomyopathy and congestive heart failure.

## Procedural History

On February 4, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 6, 2009, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On March 19, 2010, the ALJ issued an unfavorable decision. On December 20, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a cashier/food server, assistant manager, convenience store clerk, and retail cashier/stocker.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in engaging in an erroneous analysis of her credibility which is not based upon substantial evidence.

## Credibility Analysis

In his decision, the ALJ found Claimant suffered from the severe impairment of cardiomyopathy. (Tr. 13). He determined Claimant retained the RFC to perform light work except that she could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, occasionally stoop, crouch, crawl, kneel, balance, and climb stairs, but may never climb ladders, ropes, or scaffolds, could frequently reach, handle, finger, feel, and push/pull bilaterally, occasionally operate foot controls and could occasionally operate a motor vehicle, be exposed to dust fumes and gases and be exposed to vibrations and moving mechanical parts. Claimant was to avoid unprotected heights as well as extreme heat and cold temperatures. (Tr. 16). The ALJ concluded Claimant could perform her past relevant work as a cashier/food server and assistant manager (as listed, but not as performed), convenience store clerk, and retail cashier/stocker. (Tr. 20).

On November 16, 2007, Claimant sought treatment at the emergency room as a result of shortness of breath. (Tr. 281). X-

rays revealed an enlarged heart. Claimant was diagnosed with postpartum cardiomyopathy. (Tr. 299-300). Claimant's condition improved and she was released from the hospital.

On December 4, 2007, Claimant went to the Hillcrest Heart Failure Care Center complaining of lightheadedness and dizziness. Claimant was diagnosed with non-ischemic dilated cardiomyopathy-peripartum, symptoms of heart failure with a left ventricular ejection fraction of 25, 1+ mitral and aortic regurgitation, and hypertension during pregnancy. Claimant was treated with medication. (Tr. 344-349). Claimant's condition improved in January of 2008. (Tr. 343, 347).

On April 1, 2008, Claimant reported to Hillcrest Medical Center for a follow-up. Dr. Alan M. Kaneshige analyzed the electrocardiogram taken that day and found a sinus rhythm, left atrial abnormality, and nonspecific ST-T wave changes. He also noted that the echocardiogram demonstrated an enlarged left ventricle with severely reduced systolic function, ejection fraction approximately 25%, mild aortic and mitral regurgitation with no pericardial effusion identified. Persistent left ventricular dysfunction was noted. (Tr. 398-99).

On May 20, 2008, a further echocardiogram revealed left ventricular systolic function was low normal. The ejection fraction was calculated at 50%. The study was noted as

"technically difficult." (Tr. 359-60).

On July 1, 2008, Claimant returned to the Hillcrest Medical Center for evaluation. She was advised that if her ejection fraction fell below 35%, she would need an implantable cardioverter defibrillator. However, after reviewing her latest echocardiogram, it was determined that no defibrillator was needed at that time. (Tr. 390-91).

On August 1, 2008, Claimant again saw Dr. Kaneshige. An additional echocardiogram was performed which demonstrated he left ventricular cavity size appeared normal with moderately reduced systolic function, ejection fraction being 30-35%. There was also moderate generalized left ventricular hypokinesis. The right ventricular size and systolic function appeared normal. Claimant did not show symptoms of heart failure at that time. (Tr. 408-09).

On September 18, 2008, Dr. Kaneshige stated upon inquiry from the Social Security Administration that Claimant could perform sedentary work but that "we still need to accurately determine her ejection fraction to see if she needs an ICO." (Tr. 430).

In evaluating Claimant's credibility, the ALJ set out Claimant's statement in her Adult Disability Report that her condition did not allow her to stay on her feet for very long and that she gets tired, dizzy, and has trouble breathing sometimes. (Tr. 16). The ALJ also noted that the Report set out Claimant

makes breakfast for she and her children, washes dishes, does laundry, and runs errands. Claimant stated she has no problems with personal care and is able to complete house work with assistance from her mother. Claimant shops, drives, has hobbies, and takes care of her children. She is tired, feels weak, and gets tired a lot. Claimant gets dizzy if she stands too long. She can walk for about 20-30 minutes before needing to rest for 5 minutes. From her hearing testimony, the ALJ related that Claimant has gained 40-50 pounds in the past year due to a lack of exercise. She also stated she has a driver's license and does drive but has not worked since November 15, 2007. She testified she gets really tired and that breathing and dizziness are problems whenever she tries to do any activity. (Tr. 17).

Based upon this information, the ALJ entered the boilerplate paragraph in finding Claimant's credibility wanting:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 17).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not

8

just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

Other than the oft-used phrase, the ALJ performed no analysis of Claimant's credibility under the factors required by the regulations. No linking of the evidence to the ALJ's findings on credibility appear in the decision. Moreover, as has previously been recognized in this Court, the statement on credibility

9

contained in the ALJ's decision is vague and unhelpful. More importantly, it is flawed. The ALJ appears to have predetermined Claimant's RFC before even considering Claimant's statements as to the limiting effects her conditions might have upon her ability to engage in work activity. In essence, the ALJ has failed to provide any basis for rejecting Claimant's statements of limitation. Some objective medical basis exists for Claimant's stated limitations. The ALJ shall properly assess Claimant's credibility on remand in light of the factors required by the regulations and in light of the medical evidence.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 21st day of March, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE